OPINION
{¶ 1} Defendant-appellant Antwuan Maurice Rice appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of possession of cocaine. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 8, 2005, the Stark County Grand Jury indicted appellant on one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree. At his arraignment on July 15, 2005, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, on July 27, 2005, appellant filed a Motion to Suppress. Appellant, in his motion, argued that the stop of his vehicle was not based on articulable and reasonable suspicion of criminal activity and, therefore, was unlawful. A suppression hearing was held on August 8, 2005. The following testimony was adduced at the hearing.
 {¶ 4} On June 8, 2005, Canton Police Officer Craig Riley was working with the gang task force. As part of his assignment, Officer Riley was patrolling in the area of Third Street and Candy in the City of Canton in an unmarked vehicle with lights and sirens. According to the officer, the gang task force had received information from confidential informants earlier that day that individuals from Michigan were "coming down and setting up shop in the area of Third and Candy and a couple other houses and apartments in the downtown area." Transcript of August 8, 2005, hearing at 6. Officer Riley testified that such individuals allegedly were trafficking in drugs and selling weapons.
 {¶ 5} While Officer Riley was in the area, he observed appellant's vehicle, which had Michigan plates, parked at the curb on Third Street. Officer Riley testified that appellant pulled away from the curb, heading westbound, and that appellant then failed to signal when turning northbound. Officer Riley, who was in a gang task force uniform, then pulled appellant over. When the officer asked appellant for his driver's license, appellant indicated either that he did not have his license or could not find the same. Appellant, however, produced the registration card for his vehicle that showed his driver's license number. After having the number run through the Michigan teletype, Officer Riley was informed that appellant's Michigan driver's license was suspended.
 {¶ 6} The officer then asked appellant to step out of his vehicle since he was going to arrest appellant for driving under suspension. After appellant refused to get out of his vehicle, Officer John Dittmore, who also was on the scene, grabbed appellant's left arm and started pulling on the same. Appellant then came out willingly. According to Officer Riley, "as he came out, like from about knee high to him, I could see a clear plastic bag, which appeared to be crack cocaine, fall to the ground." Transcript of August 8, 2005, hearing at 14. The bag was later determined to contain .44 grams of crack cocaine. Appellant's two passengers were still in the vehicle at such time. Appellant was then arrested.
 {¶ 7} On cross-examination, Officer Riley testified that appellant's name was not brought up on the list of individuals suspected of drug trafficking although "his rear passenger was and we had found crack in his apartment before." Transcript of August 8, 2005, hearing at 18. Officer Riley further testified that he never saw the bag of cocaine in appellant's possession and did not see any baggies in appellant's vehicle when asking appellant's two passengers for their licenses. According to the officer, appellant indicated that the bag of cocaine was not his.
 {¶ 8} At the suppression hearing, Canton Police Officer John Dittmore testified that he was assigned to the gang task force and was working with such unit on June 8, 2005. Officer Dittmore responded to the scene and, after appellant initially refused to exit his vehicle, "opened the door and took hold of his left arm and pulled him out of the vehicle." Transcript of August 8, 2005, hearing at 31. At the time, Officer Dittmore was wearing a shirt with a Canton police patch on the front. The following is an excerpt from Officer Dittmore's testimony:
 {¶ 9} "Q. And did you, as you were getting the defendant out of the vehicle, did you notice anything at that time?
 {¶ 10} "A. Yes, when I moved the defendant away from his vehicle, ah, toward our, from the side of the vehicle to the back of the vehicle, I can see a small bag of crack laying there where I just had taken him out. It was laying in the roadway.
 {¶ 11} "Q. Okay.
 {¶ 12} "A. No. No. That portion of the roadway — actually, the vehicle was stopped, was on Third Street near Shorb, just been repaved recently. Just all been, road's been completely redone, so the road is very black. So the crack cocaine in the bag was a, sharp contrast on the ground, could be seen.
 {¶ 13} "Q. All right. And did you see, physically see how that baggy got to be on the ground or did you just first notice it when it was on the ground?
 {¶ 14} "A. That's when I first noticed it. After I moved him away from the vehicle.
 {¶ 15} "Q. Okay." Transcript of August 8, 2005, hearing at 32-33. The trial court subsequently denied appellant's Motion to Suppress.
 {¶ 16} A jury trial was then held on August 18, 2005. In addition to the same testimony as adduced at the suppression hearing, testimony was adduced at trial that appellant's vehicle was towed and an inventory search was conducted. During the inventory search, $550.00 in currency was found in the center console of appellant's car and, during a search of appellant's person, $50.00 was found in appellant's sock. All of the money contained traces of cocaine.
 {¶ 17} On August 18, 2005, the jury found appellant guilty of possession of cocaine. As memorialized in a Journal Entry filed on August 30, 2005, appellant was sentenced to ten (10) months in prison and ordered to pay a fine in the amount of $2,500.00. In addition, appellant's driver's license was suspended for a period of two years.
 {¶ 18} On August 22, 2005, appellant filed a Motion to Waive Fines, arguing that he was indigent and unable to pay the $2,500.00 fine. Appellant also filed an affidavit of indigency. A hearing on appellant's motion was held on September 6, 2005. At the hearing, the trial court overruled appellant's motion stating on the record as follows:
 {¶ 19} "THE COURT: The motion will be overruled. The Defendant was sentenced to prison, and we understand while he's in prison, he cannot pay the fine. That's not an issue with me.
 {¶ 20} "And if you would present to me an order requesting that the State not take any money from his commissary privileges while in prison to pay the fine and costs, I will grant that entry, but whether or not he is going to be indigent once he gets released from prison is a different story.
 {¶ 21} I'm assuming after he goes through our system he will be rehabilitated, he will come out. He will get a well-paying job to exceed $25,000 a year, middle management with Wal-Mart, and certainly being a Wal-Mart employee he'll want to make that restitution. So I'm going to wait and give him that chance, and I will take any Court of Appeals that doesn't trust him to be be rehabilitated and work at Wal-Mart just doesn't have any faith in this American system of ours.
 {¶ 22} So I'm going to deny that right now, Mr. Drake." Transcript of September 6, 2005, hearing at 4-5. Pursuant to a Judgment Entry filed on September 13, 2005, the trial court dismissed appellant's motion.
 {¶ 23} Appellant now raises the following assignments of error on appeal:
 {¶ 24} "I. THE COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS.
 {¶ 25} "II. APPELLANT'S CONVICTION FOR POSSESSION OF COCAINE WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 26} "III. THE TRIAL COURT ERRED WHEN IT IMPOSED A PRISON TERM UPON APPELLANT FOR A FIFTH DEGREE FELONY.
 {¶ 27} "IV. APPELLANT'S SIX AMENDMENT RIGHT WAS VIOLATED WHEN THE COURT IMPOSED A SENTENCE THAT WAS MORE THAN THE MINIMUM.
 {¶ 28} "V. THE TRIAL COURT ERRED BY NOT CONSIDERING APPELLANTS CURRENT OR FUTURE ABILITY TO PAY THE FINE THAT IT IMPOSED.
 {¶ 29} Since appellant filed a Notice of Abandonment of Assignments III IV, only the remaining assignments of error shall be addressed.
 I {¶ 30} Appellant, in his first assignment of error, argues that the trial court erred in overruling his Motion to Suppress. We disagree.
 {¶ 31} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; andState v. Guysinger, supra.
 {¶ 32} Appellant specifically contends that his Motion to Suppress should have been granted since "the stop of appellant's vehicle was an investigatory stop not supported by articulable facts." Appellant maintains that the traffic stop of his vehicle was pretextual and that the real reason Officer Riley stopped him was to determine if appellant was engaged in drug activity.
 {¶ 33} However, in Dayton v. Erickson, 76 Ohio St.3d 3,665 N.E.2d 1091, 1996-Ohio-431, the Ohio Supreme Court stated: "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at 11.
 {¶ 34} This Court, in State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, 2001 WL 111891, held that any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle. "[T]he severity of the violation is not the determining factor as to whether probable cause existed for the stop." State v. Weimaster (Dec. 21, 1999), Richland App. No. 99CA36, 2000 WL 1615 at 3. Rather, `* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *'" Id. at 3, citing Erickson at 11-12,665 N.E.2d 1091.
 {¶ 35} We herein apply a similar analysis and find that there was sufficient reasonable, articulable suspicion of a traffic violation to justify a stop of appellant's vehicle. As is set forth above, Officer Riley testified at the suppression hearing that he stopped appellant's vehicle after observing appellant fail to signal before turning. We find, therefore, that the stop of appellant's vehicle by Officer Riley was constitutionally valid even if Officer Riley had an ulterior motive for stopping appellant. Accordingly, we find the trial court did not err in overruling appellant's Motion to Suppress.
 {¶ 36} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 37} Appellant, in his second assignment of error, contends that his conviction for possession of cocaine was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 38} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 39} Appellant specifically contends that the evidence presented at trial did not establish that appellant had possession of the cocaine. Possession is defined by R.C.2925.01(K) as: "[H]aving control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession may be actual or constructive." State v. Kobi (1997), 122 Ohio App.3d 160,174, 701 N.E.2d 420. To establish constructive possession of illegal drugs, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. Statev. Wolery (1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly (2000), 137 Ohio App.3d 134, 141,738 N.E.2d 93. Circumstantial evidence that a defendant was located in very close proximity to readily usable drugs may show constructive possession. State v. Barr (1993),86 Ohio App.3d 227, 247-248, 620 N.E.2d 242.
 {¶ 40} In the case sub judice, testimony was adduced at trial that, when appellant exited his vehicle after the same was stopped, a plastic baggie containing .44 ounces of crack cocaine fell from appellant's knee area to the ground. In addition, the $500.00 in cash found in the center console of appellant's car and the $50.00 in cash located in his sock contained traces of crack cocaine. We concur with appellee that "[g]iven the closeness in time and location to the discovery of the drugs, and the moneys found on [appellant] and in his Pontiac containing traces of crack cocaine, the evidence supports a finding that [appellant] possessed the crack cocaine."
 {¶ 41} Based on the foregoing, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly possessed the crack cocaine. From the evidence adduced at trial, the jury could have found that appellant was located in very close proximity to the crack cocaine so as to be able to exercise dominion or control over the same. We further find that the jury did not lose its way so as to create a manifest miscarriage of justice.
 {¶ 42} Appellant's second assignment of error is, therefore, overruled.
 V {¶ 43} Appellant, in his fifth assignment of error, maintains that the trial court erred by not considering appellant's current or future ability to pay the $2,500.00 fine that it imposed upon him. Appellant notes that he filed an affidavit of indigency with the trial court.
 {¶ 44} Pursuant to R.C. 2929.18(A)(3), a trial court may impose a fine of up to $15,000 for a felony of the second degree. However, "[b]efore imposing a financial sanction under section 2929 .18 of the Revised Code * * * the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). "[T]here are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record." State v. Martin, 140 Ohio App.3d 326, 338,747 N.E.2d 318, 2000-Ohio-1942.
 {¶ 45} In the case sub judice, a hearing on appellant's Motion to Waive Fines was held on September 6, 2005. At the hearing, the trial court indicated that it did not expect appellant to pay the fine during the ten (10) months that appellant was in prison. The trial court, in its October 14, 2005, Judgment Entry, further stated that "[u]pon release from the Institution and a showing of indigency after twelve months, the Defendant may renew his motion and the Court will reconsider at that time." We find, based upon the foregoing, that the trial court did not abuse its discretion in imposing the $2,500.00 fine and overruling appellant's Motion to Waive the same.
 {¶ 46} Based on the foregoing, we find that the trial court did not err in overruling appellant's Motion to Vacate the fine.
 {¶ 47} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.