OPINION *Page 2 
{¶ 1} Plaintiff-appellant the State of Ohio appeals the August 18, 2006 Judgment Entry entered by the Licking County Municipal Court, which granted defendant-appellee Christopher Mays' Motion to Suppress.
 STATEMENT OF THE CASE AND FACTS {¶ 2} The following facts were found by the trial court in the Judgment Entry granting appellee's motion to suppress.
 {¶ 3} On the early morning hours of March 26, 2006, Trooper Milligan of the Ohio State Highway Patrol was traveling westbound on State Route 16 in Newark, Ohio. Near the area where Granville Road and State Route 16 diverge, Trooper Milligan observed the vehicle in front of him drift across the white fog line by approximately one tire width. A few moments later he observed the same thing; the vehicle drifted across the right fog line by about a tire width and drift back into his lane. Significantly, Trooper Milligan described the vehicles movement as "slowly drifting" across the line, rather than an erratic or abrupt movement.
 {¶ 4} Trooper Milligan continued following the [appellee] for approximately one and a half miles. In that time, he observed no traffic violations, equipment defects or suspicious or erratic driving. A short time later, Trooper Milligan signaled the driver to pull over.
 {¶ 5} Trooper Milligan exited his cruiser and approached the vehicle where he encountered the driver, Christopher Mays. Trooper Milligan asked the [appellee] for his driver's license and the [appellee] attempted to hand him a credit card. Trooper Milligan also noticed that the [appellee] had blood-shot, glassy eyes, that he smelled of alcohol, *Page 3 
and that the [appellee's] cigarette ashes kept dropping on his pants without any regard from the Defendant. When he asked if he had been drinking the [appellee] replied that he had had a few drinks: At that point, Trooper Milligan asked the [appellee] to exit the vehicle so he could administer field sobriety tests. He attempted to perform the horizontal gaze nystagmus test, but the [appellee] would not follow the stimulus. Trooper Milligan then asked the [appellee] if he was willing to take any field sobriety tests and the [appellee] replied that he would not because he did not think they were fair. At that point, Trooper Milligan placed the [appellee] under arrest and transported him to the police station where he was read the BMV 2255. He then refused to take a chemical test of his breath.
 {¶ 6} Appellant was subsequently charged with operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19 (A) (1) (a); and a marked lanes violation of R.C. 4511.33.
 {¶ 7} After hearing the evidence, the trial court found Trooper Milligan did not have an articulable and reasonable suspicion to support the traffic stop. The trial court granted appellee's motion to suppress via Judgment Entry filed August 18, 2006.
 {¶ 8} It is from this entry the State appeals, raising the following assignment of error:
 {¶ 9} "I. THE TRIAL COURT DID ERR IN GRANTING THE DEFENDANT'S MOTION TO SUPPRESS BY FINDING THAT TROOPER MILLIGAN DID NOT HAVE REASONABLE SUSPICION OR PROBABLE CAUSE TO INITIATE A TRAFFIC STOP ON THE APPELLEE'S VEHICLE." *Page 4 
 I. {¶ 10} In its sole assignment of error, the State maintains the trial court misapplied the applicable law when it equated reasonable, articulable suspicion for a traffic stop with a requirement an independent criminal or traffic violation had been committed. The only issue raised for review by appellant is whether crossing the white line on the right side of the road two times, together with a slight weaving within one's lane of travel, is sufficient articulable suspicion to justify a traffic stop.
 {¶ 11} Initially, we note that there are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, and State v. Guysinger (1993), *Page 5 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v.U.S. (1996), 517 U.S. 690, 699, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing this Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
 {¶ 12} In State v. Lambert (August 20, 2001), Stark App. No. 2001CA00089, unreported, this Court addressed the same argument under nearly identical facts. In that case, a trooper "observed appellant cross the white line by a tire width and touch the white line two more times, all within a mile and a half distance." Id. at 2. Relying onDayton v. Erickson (1996), 76 Ohio St.3d 3, and our analysis inState v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, unreported, we held that any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle. We reiterated the following: "[t]he severity of the violation is not the determining factor as to whether probable cause existed for the stop.State v. Weimaster (Dec. 21, 1999), Richland App. No. 99CA36, unreported. Rather, ` * * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * * ` "Id. at 5, citing McCormick at 10, citingErickson at 11-12. See also, State v. Messick, 5th Dist. No. 06CA090065, 2007-Ohio-1824 at ¶ 13; State v. Rice, 5th Dist No. 2005CA00242, 2006-Ohio-3703 at ¶ 34;State v. Kearns, 5th Dist. No. 01-CA-6, 2001-Ohio-1741;State v. Lambert (Aug. 20, 2001), 5th Dist. No. 2001 CA 00089. *Page 6 
 {¶ 13} The traffic law for which appellant was stopped and cited is R.C. 4511.33, which provides:
 {¶ 14} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 15} "(A) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." (Emphasis added.)
 {¶ 16} In the case at bar, as with many cases involving a crossing of the fog line, the necessary analysis really focuses upon the meaning of "practicable" in reference to maintaining a vehicle within a lane pursuant to R.C. 4511.33. State v. Hodge (2002), 147 Ohio App.3d 550,557, 2002-Ohio-3053 at ¶ 28, 771 N.E.2d 331, 337. In a well-reasoned analysis, the Seventh District Court of Appeals in Hodge, observed "[t]he legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists the option of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or *Page 7 
carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable". Id. at 558, 2002-Ohio-3053 at ¶ 43, 771 N.E.2d at 338. The Court in Hodge, further recognized: "[w]e do not intend our decision to stand for the proposition that movement within one lane is a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop.
 {¶ 17} "The nature of the weaving has been used to distinguish weaving which might objectively support a stop, from weaving that would not. SeeState v. Williams (1993), 86 Ohio App.3d 37, 43, 619 N.E.2d 1141. In conjunction with other factors, such as the nature of the weaving and community patterns of behavior, the time of day at which the observations are made can provide support for a determination that the arresting officer reasonably suspected that a driver was intoxicated. See [State v.] Hiler [(1994)], 96 Ohio App.3d [271] at 274,644 N.E.2d 1096. See, also, Gedeon, 81 Ohio App.3d at 619, 611 N.E.2d 972, citing[State v.] Hilleary [May 24, 1989] Miami App. No. 88-CA-5 [unreported,1989 WL 55637], and Montpelier v. Lyon (May 1, 1987), Williams App. No. WMS-86-16, unreported [1987 WL 10630]. * * *' In addition, while not dispositive, we agree with the Second District's observation that `[t]he erratic driving alone was a sufficient basis for an articulable and reasonable suspicion, justifying an investigatory stop to determine the reason for the erratic driving, under the holdings of Terry andForeman. The officer may have a duty * * * to investigate the cause of the weaving, in order to protect the public, and even [the driver] against such possible causes as the driver being under the influence, the driver being unduly mentally fatigued *Page 8 
or sleepy, or even some mechanical defect of the automobile.'Hilleary, Miami App. No. 88 CA 5 [unreported]. Flanagan at 2-3". Id. at 559, 2002-Ohio-3053 at ¶ 45-46, 771 N.E.2d at 338-339.
 {¶ 18} The trial court granted appellee's motion to suppress, finding: "the trooper did not have reasonable articulable suspicion of a traffic violation to justify the stop." (Decision and Entry Granting Defendant's Motion to Suppress, filed August 18, 2006 at 4).
 {¶ 19} In so ruling, the trial court found: "[t]he fact that the Defendant's vehicle briefly drifted across the right fog line on two occasions near an area where the road diverges does not constitute a traffic violation in the absence of other traffic on the road. . . ." (Id.).
 {¶ 20} In the case at bar, we find, under the totality of the circumstances, the officer had a reasonable and articulable suspicion appellee may have violated R.C. 4511.33; therefore, he was justified in stopping appellee's vehicle. As stated supra, Trooper Milligan's testimony provided reasonable and articulable facts concerning the traffic violation which provided justification to stop appellee's vehicle. While a defendant may argue that there were reasons for which he or she should not have been convicted of a violation of R.C.4511.33(A), an officer is not required to have proof beyond a reasonable doubt that someone has violated the marked lane statute in order to make a traffic stop nor must an officer eliminate all possible innocent explanations for someone going over the edge lines. See, State v.Boyd (Oct. 10, 1996), Richland App. No. 96-CA-3. The officer need only have a reasonable suspicion based upon articulable facts that the driver violated the marked lanes statute. State v. Lambert, supra. *Page 9 
 {¶ 21} Based upon the foregoing, we find the trial court erred in granting appellee's motion to suppress.
 {¶ 22} The State's sole assignment of error is sustained.
 {¶ 23} The judgment of the Licking County Municipal Court is Reversed and this case remanded for further proceedings consistent with the law and this opinion.
 By Gwin, P.J., Farmer, J., and Wise, J., concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Licking County Municipal Court is Reversed and this case remanded for further proceedings consistent with the law and this opinion. Costs to appellee. *Page 1