[Cite as *State v. Harris*, 2021-Ohio-4007.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JAMES E. HARRIS | : | Case No. CT2020-0052 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:              Appeal from the Court of Common
                                     Pleas, Case No. CR2020-0073

JUDGMENT:                            Affirmed

DATE OF JUDGMENT:                    November 9, 2021

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

TAYLOR P. BENNINGTON                            ELIZABETH N. GABA
27 North Fifth Street                           1231 East Broad Street
P.O. Box 189                                    Columbus, OH  43205
Zanesville, OH  43702-0189

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, James E. Harris, appeals his November 10, 2020 conviction by the Court of Common Pleas of Muskingum County, Ohio.  Plaintiff-Appellee is state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 29, 2020, the Muskingum County Grand Jury indicted appellant on two counts of trafficking in drugs (cocaine and methamphetamines), one with a major drug offender specification, in violation of R.C. 2925.03 and 2941.1410, two counts of possession of drugs (cocaine and methamphetamines), one with a major drug offender specification, in violation of R.C. 2925.11 and 2941.1410, and one count of possession of drug paraphernalia in violation of R.C. 2925.14.  Said charges arose from a traffic stop and subsequent investigation.

{¶ 3}   On March 24, 2020, appellant filed a motion to suppress, claiming an illegal stop, search, and seizure.  Appellant supplemented his motion on May 26, 2020.  Hearings were held on July 16, and August 25, 2020.  By entry filed August 27, 2020, the trial court denied the motion.

{¶ 4}   Appellant pled no contest to the charges on September 18, 2020.  By entry filed September 21, 2020, the trial court found appellant guilty of the charges and ordered a presentence investigation.  A sentencing hearing was held on November 2, 2020.  By entry filed November 10, 2020, the trial court sentenced appellant to a minimum mandatory term of twenty-one years in prison and an indefinite maximum term of twenty-six and one-half years in prison.

{¶ 5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 6}   "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S SUPPRESSION MOTIONS.  DEFENDANT DID NOT COMMIT A MINOR MISDEMEANOR TRAFFIC OFFENSE, AND SGT. BRIGGS DID NOT HAVE REASONABLE ARTICULABLE SUSPICION THAT THE DEFENDANT WAS ENGAGED IN CRIMINAL ACTIVITY."

II

{¶ 7}   "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S SUPPRESSION MOTIONS.  DEFENDANT DID NOT COMMIT A MINOR MISDEMEANOR TRAFFIC OFFENSE, AND SGT. BRIGGS, A PERRY COUNTY OFFICER, DID NOT HAVE JURISDICTION TO CONDUCT DEFENDANT'S TRAFFIC STOP IN MUSKINGUM COUNTY."

III

{¶ 8}   "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S SUPPRESSION MOTIONS.   THIS PRETEXTUAL TRAFFIC STOP SHOULD HAVE BEEN SUPPRESSED.  PRETEXTUAL STOPS VIOLATE THE FOURTH AMENDMENT AND THE EQUAL PROTECTION CLAUSE."

IV

{¶ 9}   "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S SUPPRESSION MOTIONS.  SGT. BRIGGS VIOLATED POLICY AND PROCEDURES REGARDING HIS BODY WORN CAMERA, AND THE LOCAL POLICE AND SHERIFFS IN MUSKINGUM COUNTY INTENTIONALLY WEAR NO CAMERAS AND HAVE NO CRUISER CAMERAS, VIOLATING DEFENDANT'S RIGHT TO BRADY EVIDENCE."

V

{¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT IMPOSED A 'NO CONTEST PLEA TAX' MUCH LIKE A 'TRIAL TAX' IN SENTENCING DEFENDANT.  SUCH A 'NO CONTEST PLEA TAX' VIOLATES DEFENDANT'S DUE PROCESS RIGHTS AND SIXTH AMENDMENT RIGHTS."

VI

{¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT USED IMPROPER JUDICIAL FACT-FINDING REGARDING PRIOR ACQUITTED AND REDUCED SENTENCES TO IMPOSE A DISPROPORTIONATE SENTENCE ON MR. HARRIS, IN VIOLATION OF HIS CONSTITUTIONAL AND HUMAN RIGHTS."

I, II, III, IV

{¶ 12} In his first, second, third, and fourth assignments of error, appellant claims the trial court erred and abused its discretion in denying his motion to suppress, making four different arguments: 1) he did not commit a minor misdemeanor traffic offense and the officer did not have a reasonable articulable suspicion that he had engaged in criminal

activity to justify the stop; 2) the officer did not have jurisdiction to conduct the traffic stop; 3) the traffic stop was pretextual; and 4) the officer violated policy and procedures related to his body camera.  We disagree with appellant's arguments.

{¶ 13} As stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶ 14} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 15} At the suppression hearing, the trial court heard from Sergeant David Briggs, the officer that stopped appellant and conducted the investigation. Sergeant Briggs is employed with the Perry County Sheriff's Office and is also an agent for the Central Ohio Drug Enforcement Task Force (hereinafter "CODE"). July 16, 2020 T. at 19. The task force had information that appellant was "allegedly trafficking narcotics." *Id.* at 23. Sergeant Briggs and another officer decided to conduct surveillance of appellant's movements and "took a position up around the house somewhere." *Id.* at 24. A vehicle that left the residence passed by Sergeant Briggs. He observed the vehicle "straddling the double yellow line." *Id* at 24, 74; Defendant's Exhibits 1 and 2. The driver was "completely over the line by probably a foot, foot-and-a-half." *Id.* at 60. Sergeant Briggs pulled out behind the vehicle and attempted to catch up to it. *Id.* at 24. He followed the vehicle and observed the driver make a turn without activating his turn signal "until he was already in the process of making the turn. Not a hundred feet prior to the turn." *Id.* at 25, 75-76. Sergeant Briggs waited for a safe spot to stop the vehicle and then activated his lights. *Id.* The driver slowed, pulled off the side of the road, came back onto the road, traveled a little bit, and repeated the process a couple times. *Id.* at 25-26. Sergeant Briggs observed furtive movements from the passenger. *Id.* at 26. The driver of the vehicle, appellant herein, eventually pulled over. Sergeant Briggs contacted dispatch to determine appellant's driving privileges. He then ran the canine officer around the vehicle who alerted to the odor of narcotics. *Id.* at 34, 48, 102. Sergeant Briggs then searched the vehicle and found what he suspected to be narcotics. *Id.* at 48, 102.

REASONABLE ARTICULABLE SUSPICION

{¶ 16} In *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus; *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 17} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 18} This court has consistently held any traffic violation could form a sufficient basis upon which to stop a vehicle, including a de minimis violation. *State v. Lambert,* 5th Dist. Stark No. 2001 CA 00089, 2001 WL 967898 (Aug. 20, 2001) (crossing over the white line on the right side of the road by a tire width and touching it two more times); *State v. Messick,* 5th Dist. Delaware No. 06CAC090065, 2007-Ohio-1824 (weaving within lane coupled with left turn from the right lane); *State v. Mays,* 5th Dist. Licking No. 2006-

CA-00097, 2007-Ohio-2807 (drifting across the white fog line by approximately one tire width on two occasions).

{¶ 19} The Supreme Court of Ohio reviewed the *Mays* decision on certification and held: "A traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus.

{¶ 20} Sergeant Briggs testified to observing appellant "straddling the double yellow line," "completely over the line by probably a foot, foot-and-a-half," and make a turn without activating his turn signal "until he was already in the process of making the turn." Based upon his observations, Sergeant Briggs had a reasonable and articulable suspicion that appellant had violated R.C. 4511.33, rules for driving in marked lanes. As the trier of fact, the trial court was free to believe the officer's testimony.

{¶ 21} We find Sergeant Briggs had a reasonable articulable suspicion to stop the vehicle for a traffic violation.

### JURISDICTION

{¶ 22} Sergeant Briggs observed the lane violation in Perry County. *Id.* at 60. After he pulled out behind appellant and started following him, appellant traveled into Muskingum County. *Id.* The signal violation and the stop occurred in Muskingum County. *Id.* at 60-61. Sergeant Brigg's purpose in surveilling and following appellant was to effectuate a traffic stop and engage in a drug investigation. *Id.* at 63, 71-72.

{¶ 23} Sergeant Briggs testified as a Perry County Sheriff's Deputy and a CODE agent, he has "jurisdiction in Muskingum, Licking, Knox, Coshocton, and Guernsey County for drug-related offenses," but focuses on Perry County.  July 16, 2020 T. at 20.

{¶ 24} When cross-examined on the jurisdictional issue, as to how he could effectuate a traffic stop in another county, Sergeant Briggs explained his answer was two-fold: "One, there's an (sic) continuous course of conduct.  I observed a violation in Perry County and I can effect an arrest - - or traffic stop in Muskingum County.  The other answer would be, as a member of the Central Ohio Drug Enforcement Task Force, I have the ability to work investigations in Muskingum County."  *Id.* at 78.  Sergeant Briggs agreed he had jurisdiction even for a marked lanes violation.  *Id.*

{¶ 25} R.C. 2935.03(D) authorizes extraterritorial jurisdictional stops if all of the following apply:

(1) The pursuit takes place without unreasonable delay after the offense is committed;

(2) The pursuit is initiated within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected or within the limits of the territorial jurisdiction of the peace officer;

(3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to section 4510.036 of the Revised Code.

{¶ 26} In this case, Sergeant Briggs observed the marked lanes violation in Perry County and immediately started following appellant in Perry County; factors (1) and (2) have been met.

{¶ 27} Pursuant to R.C. 4510.01(E), " '[m]oving violation' means any violation of any statute or ordinance that regulates the operation of vehicles, streetcars, or trackless trolleys on the highways or streets."   R.C. 4510.036 governs point system for motor vehicle violations.   Subsection (C)(15) states: "With the exception of violations under section 4510.12 of the Revised Code where no points shall be assessed, all other moving violations reported under this section .......... 2 points."   Therefore, a marked lanes violation is a moving violation subject to chargeable points under R.C. 4510.036(C)(15); factor (3) has been met.  *State v. Paolucci,* 11th Dist. Lake No. 2017-L-059, 2018-Ohio-1332.

{¶ 28} It is unclear from the record and the videotape of Sergeant Briggs following appellant's vehicle as to when Perry County ended and Muskingum County started.  At the end of the hearing, the trial court noted the following (August 25, 2020 T. at 21):

> The Court saw where the officer attempted to take off the body cam and record what was going on.  There was excessive speed.  There was a twisty, turny township road, basically out in the middle of nowhere.  I have been on that road myself.  It's not a good place to try to pull somebody over and there aren't any places to pull somebody over.  He didn't have to and he didn't, because he couldn't keep up with the vehicle in front of him.

{¶ 29} A review of the videotape confirms this finding.  State's Exhibit B.  Sergeant Briggs attempted to stop appellant as soon as practicable.

{¶ 30} We find Sergeant Briggs had jurisdiction to stop appellant in Muskingum County as a CODE officer and under the authority of R.C. 2935.03(D).

PRETEXTUAL STOP

{¶ 31} Sergeant Briggs admitted he was following appellant to effectuate a traffic stop as part of a drug investigation and the prosecutor stipulated appellant "was a narcotics dealer and a target for investigation."  July 16, 2020 T. at 108.

{¶ 32} In *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus, the Supreme Court of Ohio held the following:

Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.  (*United States v. Ferguson* [C.A.6, 1993], 8 F.3d 385, applied and followed.)

{¶ 33} Sergeant Briggs observed a traffic violation and therefore had probable cause to stop appellant.

{¶ 34} We do not find a constitutional violation as argued by appellant.

BODY CAMERA

{¶ 35} Appellant argues he was denied *Brady* evidence. In *Matter of P.K.,* 5th Dist. Guernsey No. 19 CA 08, 2019-Ohio-2311, ¶ 11, this court explained the following:

Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. See 373 U.S., at 87. The Supreme Court has explained, "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell,* 556 U.S. 449, 469-470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

{¶ 36} In this case, the state produced Sergeant Brigg's body camera footage. State's Exhibit B. While Sergeant Briggs was following appellant's vehicle, he removed his body camera from his vest and held the camera in his hand in an attempt to record appellant's driving actions. July 16, 2020 T. at 26-27. In anticipation of stopping the vehicle, Sergeant Briggs clipped the camera back onto his vest. *Id.* at 27. Thereafter, he observed the turn signal violation. *Id.* After stopping appellant and while running the canine officer around the vehicle, Sergeant Brigg's body camera fell to the ground due to a faulty clip. *Id.* at 21-22, 32, 50; State's Exhibit A. He attempted to reattach the camera to his vest, but it kept falling to the ground. *Id.* at 50-51. Sergeant Briggs did not manipulate the camera to not record and intended to record more than he did. *Id.* at 62.

He did not notice any problems with the body camera clip prior to the day of the stop. August 25, 2020 T. at 6-7. Prior to his shift that day, he made sure the camera powered on and clipped on. July 16, 2020 T. at 85-86. After the clip broke, Sergeant Briggs agreed he was doing his best with the broken equipment. August 25, 2020 T. at 9.

{¶ 37} The state did not withhold evidence and in fact produced the body camera footage. Sergeant Briggs used his body camera as a cruiser camera in an attempt to record appellant's driving. Subsequently the clip on the camera broke, and Sergeant Briggs made several attempts to reattach the body camera onto his vest. State's Exhibit B. While it is unfortunate that the clip was faulty, it is evident that Sergeant Briggs was trying to capture anything he could on the recording rather than turning the camera off.

{¶ 38} We do not find any prejudice to appellant nor any *Brady* violations.

{¶ 39} Upon review, we find the trial court did not err in denying appellant's motion to suppress.

{¶ 40} Assignments of Error I, II, III, and IV are denied.

V, IV

{¶ 41} In his fifth and sixth assignments of error, appellant claims the trial court erred and abused its discretion in sentencing him, making two different arguments: 1) the trial court imposed a "no contest plea tax" in sentencing him; and 2) the trial court used improper judicial fact-finding regarding prior acquitted and reduced sentences to impose a disproportionate sentence. We disagree with appellant's arguments.

NO CONTEST PLEA TAX

{¶ 42} Appellant claims he was offered a plea deal of sixteen years in prison for pleading guilty, but after pleading no contest, he was found guilty and sentenced to twenty-one to twenty-six and one-half years in prison.

{¶ 43} There is nothing in the record to indicate appellant was offered a plea deal of sixteen years in exchange for a guilty plea. During the plea colloquy, the trial court properly advised appellant of the possible sentences and fines in exchange for his no contest pleas. September 18, 2020 T. at 7-11. Appellant acknowledged he understood the possible sentences and fines.

{¶ 44} During the sentencing hearing, the trial court sentenced appellant within the range discussed during the no contest hearing. November 2, 2020 T. at 27. The trial court had the benefit of a presentence investigation report and appellant's criminal history. *Id.* at 25-26. As to appellant's request to waive fine and court costs, the trial court found appellant retained an attorney for his appeal, therefore the trial court reasoned he had access to funds to pay the mandatory fines. *Id.* at 25-27.

{¶ 45} In *State v. Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.e.3d 431, ¶ 3, the Supreme Court of Ohio held the following:

> [W]e hold that there is no presumption of vindictiveness when a defendant rejects a plea bargain and is subsequently sentenced to a harsher term. The burden is on the defendant to show the judge acted vindictively. And an appellate court may reverse a sentence for vindictiveness only if, upon its examination of the entire record, it clearly and convincingly finds that the sentence was based on actual vindictiveness.

{¶ 46} We find there is no evidence of, nor argued by appellant, of vindictiveness on the part of the trial court in fashioning the sentence on the no contest plea. We do not find anything in the record to support a "no contest plea tax."

IMPROPER JUDICIAL FACT FINDING/DISPROPORTIONAL SENTENCE

{¶ 47} Appellant claims the trial court sentenced him to a disproportionate sentence, based in part on incorrectly interpreting his presentence investigation report.

{¶ 48} During the sentencing hearing, defense counsel argued a drug offense conviction out of Guernsey County contained in the report was not a felony in the first degree, but was reduced to a felony in the third degree. November 2, 2020 T. at 19-20.[1] Defense counsel also highlighted the lesser sentences of two other drug offenders "charged in this Court" and suggested if appellant received more in comparison, his sentence would be disproportionate and unfair. *Id.* at 21-22.

{¶ 49} In discussing the report and determining a sentence, the trial court stated the following (*Id.* at 26-27):

> I would also indicate to you I received the presentence investigation, had an opportunity to review the same. You do have a prior criminal history involving drugs, possession of drugs, F1; possession of crack cocaine, F1, which is now argued that it's less than that. At least at the time it was

---

[1]In his appellate brief at 27, appellant now states the drug offense charge was reduced to a felony in the second degree, not the third degree as argued to the trial court.

believed to be that. And now you had two counts of F1 drug here, as well as an F5 when you were a juvenile.

\* \* \*

Comparing this to other people, I - - I don't know if all those cases are mine. I don't know their history. I don't know this. But I know your history and I know my history of sentencing people. And I know that some of the ones she's talking about were back with the cartel and stuff. They were given consideration in regards to cooperation and what they did to help what happened. So you can't just look at what happened to some individual. You got to do and sentence each case separately, which is what I do.

{¶ 50} The trial court also made findings relative to consecutive sentencing pursuant to R.C. 2929.14(C)(4) and notified appellant of the non-life felony indefinite sentence under the Reagan Tokes law, R.C. 2967.271. *Id.* at 28, 29-31. Further, the trial court considered the factors set forth in R.C. 2929.11 and 2929.12. Entry filed November 10, 2020.

{¶ 51} Even accepting the Guernsey County case as a felony in the third degree, a review of the report indicates appellant has a history of possessing drugs, has failed to complete the SEPTA program as ordered by a trial court, and has had his supervision revoked.

{¶ 52} In *State v. Ryan,* 1st Dist. Hamilton No. C-020283, 2003-Ohio-1188, ¶ 10, our colleagues from the First District explained the following:

The Ohio plan attempts to assure proportionality in felony sentencing through consistency. R.C. 2929.11(B). Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration the trial court's discretion to weigh relevant statutory factors. *Id.* [Griffin and Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.R.L.Rev. 1, 12] at 12. The task of the appellate court is to examine the available data not to determine if the trial court has imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice. *Id.* at 13. Although offenses may be similar, distinguishing factors may justify dissimilar sentences. *Id.* at 15.

*Accord State v. King,* 5th Dist. Muskingum No. CT06-0020, 2006-Ohio-6566.

{¶ 53} We have reviewed the record and do not find the sentence imposed "is so unusual as to be outside the mainstream of local judicial practice." The trial court reviewed the presentence investigation report, considered the necessary factors, and imposed a sentence within the guidelines. We do not find anything in the record to declare the sentence to be a disproportionate sentence.

{¶ 54} Upon review, we find the trial court did not err in sentencing appellant.

{¶ 55} Assignments of Error V and VI are denied.

{¶ 56} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.

By Wise, Earle, J.

Baldwin, P.J. and

Hoffman, J. concur.

EEW/db