OPINION
{¶ 1} Appellant Kenneth Prigmore appeals his conviction in the Stark County Court of Common Pleas for one count of possession of cocaine in violation of R.C. 2925.11 (A)(C)(4)(B) a felony of the fourth degree. The appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} On October 3, 2004 shortly after midnight Canton Police officers Mark Diels and Kevin Sedares drove their marked police cruiser through the parking lot of Scorpio's bar when they observed appellant and another person sitting in a parked car. Scorpio's is known by the police to have high drug activity.
 {¶ 3} As the officers pulled up to the car and shone their spot light on it the passenger slid down into the seat, appeared to be hiding something and looked like he "wanted to melt under the dashboard." When the passenger tried to slide out of sight, the officers became suspicious that criminal activity was taking place.
 {¶ 4} The officers got out of their cruiser approached the car and asked appellant, who was seated on driver's side, to see his driver's license. The keys were in the ignition of the automobile and the engine was running. Officer Diels smelled and observed incense burning inside the car. Officer Diels testified that in his experience individuals involved with drugs burn incense to hide the odor of the drugs. When appellant told Officer Diels that he did not have a driver's license the officer asked him to step out of the car, placed him under arrest and conducted a pat-down search. Officer Diels then placed appellant in the police cruiser. Appellant gave Officer Diels permission to search the vehicle. Because of the area and because of the passenger's movements, a K-9 handler was brought to the scene. When the K-9 was walked around the exterior of the car, he indicated that contraband was in the vehicle.
 {¶ 5} Inside of the car between the passenger and driver's seat the officers located three plastic bags containing crack-cocaine and a small silver container containing crack-cocaine.
 {¶ 6} After being given his Miranda warnings appellant told the officers that when he picked up the passenger earlier that evening he knew the passenger had crack-cocaine on his person.
 {¶ 7} Appellant filed a motion to suppress evidence. The trial court conducted the suppression hearing on December 27, 2004. By judgment entry filed February 11, 2004 the trial court denied appellant's motion to suppress the evidence gathered against him. On March 14, 2005 appellant pled no contest to the charge and the court found him guilty of one count of possession of cocaine. On April 18, 2005 the trial court sentenced appellant to two years of community control sanctions.
 {¶ 8} Appellant timely appealed and raises the following sole assignment of error for our consideration:
"I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT KENNETH PRIGMORE IN DENYING THE MOTION TO SUPPRESS THE EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION WHERE THE STATE FAILED TO ESTABLISH THAT THE POLICE HAD REASONABLE SUSPICION THAT MR. PRIGMORE WAS ENGAGED IN CRIMINAL ACTIVITY TO CONDUCT A "TERRY" STOP OF MR. PRIGMORE BY SHINING A SPOTLIGHT ON HIS PARKED VEHICLE AND DEMANDING A DRIVERS LICENSE FROM HIM BECAUSE "THEY JUST LOOKED SUSPICIOUS."
 I. {¶ 9} In his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress and in finding that Officer Diels had a reasonable suspicion to stop appellant and request he produce identification. We disagree.
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93,96; State v. Claytor (1993), 85 Ohio App. 3d 623, 627; Statev. Guysinger (1993), 86 Ohio App. 3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690,116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 11} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 12} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 13} Appellant argues that the police did not have a reasonable suspicion to believe that appellant had committed, or was about to commit a felony.
 {¶ 14} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact". Ornelas v. United States
(1996), 517 U.S. 690, 695-96, 116 S.Ct. 1657, 1661-62. In general, we review determinations of historical facts only for clear error. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 698, 116 S.Ct. at 1663. On the other hand, determinations of reasonable suspicion and probable cause are reviewed de novo. Id.
 {¶ 15} The first issue is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."United States v. United States Gypsum Co. (1947), 333 U.S. 364,395. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'."United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342. In the case at hand, testimony of two police officers was presented. Specifically, the appellant argues that the testimony was conflicting with regard to whether the police were conducting a consensual encounter, or whether the police officers effectively conducted a Terry-stop and search of appellant by shinning the police cruiser's spotlight on his car, and subsequently approaching the vehicle and requesting appellant produce his driver's license.
 {¶ 16} In the trial court's Judgment Entry overruling appellant's motion to suppress filed February 11, 2005, the trial court found the encounter between the officers and appellant was initially a consensual encounter which ripened into an arrest upon the officers learning that appellant did not have a valid driver's license.
 {¶ 17} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the testifying law enforcement officers. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of Officer Diels. Such a choice is not clearly erroneous. YellowCab, 338 U.S. at 342.
 {¶ 18} The next question is whether the contact of the police officers with appellant violated the appellant's Fourth Amendment rights. Contact between police officers and the public can be characterized in three different ways. State v. Richardson, 5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate theFourth Amendment. United States v. Flowers (6th Cir. 1990),909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure."Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382,115 L.Ed.2d 389 (1991); see also INS v. Delgado, 466 U.S. 210, 212,104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Bostick, supra, at 434-435, 111 S.Ct. 2382
(citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way.Florida v. Royer (1983), 460 U.S. 491,497-98 Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.
 {¶ 19} The second type of contact is generally referred to as "a Terry stop" and is predicated upon reasonable suspicion.Richardson, supra; Flowers, 909 F.2d at 147; See Terry v.Ohio (1968), 392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the Terry
doctrine, "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime" Florida, 460 U.S. at 498. In holding that the police officer's actions were reasonable under theFourth Amendment, Justice Rehnquist provided the following discussion of the holding in Terry: "In Terry this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams (1972),407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612
 {¶ 20} The Fourth Amendment requires that officer have had a "reasonable fear for his own or others' safety" before frisking.Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868,20 L.Ed.2d 889. Specifically, "[t]he officer . . . must be able to articulate something more than an `inchoate and unparticularized suspicion or hunch.' "United States v. Sokolow (1989),490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (quoting Terry,392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "`from the standpoint of an objectively reasonable police officer,'" without reference to "the actual motivations of the individual officers involved." United States v. Hill
(D.C. Cir. 1997), 131 F.3d 1056, 1059 (quoting Ornelas v.United States (1996), 517 U.S. 690, 696, 116 S.Ct. 1657,134 L.Ed.2d 911).
 {¶ 21} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." Richardson, supra; Flowers,909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v. Heston
(1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting Beckv. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States
(1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, e.g., United Statesv. Ortiz (1975), 422 U.S. 891, 897, 95 S.Ct. 2585, 2589.
 {¶ 22} In the case at bar, appellant argues that the officers' act of shining a spotlight upon a vehicle parked in a business establishment's parking lot and their subsequent approach to ask questions and request identification of the vehicle's occupants amounted to an unreasonable investigatory stop.
 {¶ 23} In Texas v. Brown (1983), 460 U.S. 730, 740, the United States Supreme Court stated: "[i]t is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said inUnited States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 748,71 L.Ed. 1202 (1927), that "[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers noFourth Amendment protection. . . . There is no legitimate expectation of privacy, Katz v. United States, supra,389 U.S., at 361, 88 S.Ct., at 516 (1967) (Harlan, J., concurring); Smithv. Maryland, 442 U.S. 735, 739-745, 99 S.Ct. 2577, 2579-2583,61 L.Ed.2d 220 (1979), shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Id. at 739-740. (Footnotes omitted). Accordingly, the fact that the officers in the case at bar shine the police cruiser's spotlight upon appellant's car while it was parked in the parking lot is irrelevant to Fourth Amendment analysis.
 {¶ 24} In Florida v. Bostick (1991), 501 U.S. 429,111 S.Ct. 2382, the United States Supreme Court reiterated that "a consensual encounter does not trigger Fourth Amendment scrutiny. See Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions, Florida v. Rodriguez, 469 U.S. 1, 5-6,105 S.Ct. 308, 310-311, 83 L.Ed.2d 165, ask to examine identification, INS v. Delgado, 466 U.S. 210, 216,104 S.Ct. 1758, 1762-1763, 80 L.Ed.2d 247, and request consent to search luggage, Florida v. Royer, 460 U.S. 491, 501, 103 S.Ct. 1319,1326, 75 L.Ed.2d 229, provided they do not convey a message that compliance with their requests is required". 501 U.S. at 434-35,111 S.Ct. at 2386. The courts in Ohio have taken a similar approach: "[b]ecause the vehicle was parked, appellant was not subjected to a seizure per se as happens when a motorist is stopped in transit by a police officer. Numerous Ohio courts . . . have held that a police approach and encounter with a stationary vehicle is consensual in nature, thereby making theFourth Amendment inapplicable. See, e.g., State v. Welz (Dec. 9, 1994), Lake App. No. 93-L1-37, unreported; Cuyahoga Falls v.Sandstrom (June 21, 1995), Summit App. No. 17000, unreported;State v. Kiggans (Nov. 20, 1995), Stark App. No. 1995CA00157, unreported; State v. Osborne (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported". State v. Lott (Dec. 26, 1997), 11th Dist. No. 96-A-0011.
 {¶ 25} The appellant does not contest in his brief to this court that based upon the original contact with the appellant and upon further investigation, probable cause existed to arrest the appellant for driving under a suspended driver's license. Nor does appellant contest the fact that he voluntarily gave the officers consent to search the automobile. His argument is premised entirely upon an invalid "stop."
 {¶ 26} We find Officer Diels's contact with the appellant under the totality of the circumstances presented in this case does not amount to an unjustifiable intrusion by the government on the privacy of an individual such as to constitute a violation of the Fourth Amendment to the United States Constitution. Officer Diels's contact with the appellant was reasonable and prudent under the circumstances.
 {¶ 27} For the forgoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
Gwin, P.J., Farmer, J., and Edwards, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.