JUDGMENT ENTRY NUNC PRO TUNC
For the reasons stated in our Memorandum-Opinion on file dated June 29, 2007, the appeal of the judgment of the Court of Common Pleas is reversed and this case is remanded for further proceedings consistent with this opinion.
This nunc pro tunc entry corrects paragraph 34 of the judgment entry and opinion filed originally on June 29, 2007 only. Correction does not affect the ruling.
This judgment entry shall speak and be in effect, nunc pro tunc as of June 29, 2007, the date of the former judgment of this court which this judgment entry corrects and replaces.
 Costs to appellee. *Page 2 
 OPINION {¶ 1} Plaintiff-appellant the State of Ohio appeals the October 12, 2006 Judgment Entry of the Ashland County Court of Common Pleas granting defendant-appellee Gregory A. Bickel's motion to suppress evidence.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 29, 2006, at approximately 2:40 a.m., Officer Micah Morrison of the Loudonville Police Department was parked near a Dairy Delight business on W. Main Street in the Village of Loudonville, Ashland County, Ohio. Officer Morrison observed appellee's white Chevy S-10 pick-up truck make a left-hand turn from W. Main Street onto Spring Street. Officer Morrison testified that appellee turned left from the right-hand lane, as opposed to using the left turning lane, and that he did not see appellee use a turn signal prior to making that left hand turn. Based upon those observations, Officer Morrison initiated a traffic stop of appellee's truck on Spring Street for an improper left turn.
 {¶ 3} Officer Morrison approached the stopped truck and obtained identification from the appellee and all four of his passengers. Appellee was serving as the designated driver for the other occupants of his truck, and had not consumed any alcohol or other intoxicating substances that evening. Thus, the officer did not observe any sign of impairment on the part of appellee. However, Officer Morrison observed that Ms. Dawn Yendriga, who was seated on the lap of the male front seat passenger, was not wearing a seat belt.
 {¶ 4} Officer Morrison returned to his police cruiser. The officer ran the identification of all five truck occupants through dispatch for possible warrants and to *Page 3 
verify appellee's driving privileges. Officer Morrison learned that appellee had valid driving privileges and that none of the truck's occupants had pending warrants.
 {¶ 5} Officer Morrison also learned from dispatch that all of the truck's occupants apparently had prior drug convictions. However, the officer had not personally observed or otherwise detected any evidence of any additional illegal activity beyond the observed minor misdemeanor traffic violations.
 {¶ 6} Officer Morrison wrote out minor misdemeanor traffic citations for both the observed improper turning and seatbelt violations. He then walked back to the truck and handed appellee and Ms. Yendriga the completed traffic citations. The traffic stop had lasted fifteen (15) minutes up to that point.
 {¶ 7} After handing appellee the traffic citations and without informing appellee that he was free to leave, Officer Morrison asked if the appellee would care if he searched the vehicle. Appellee responded "go ahead." Following appellee's consent to the search, Officer Morrison called for back-up and had the five occupants step out of the vehicle. Officer Morrison performed a quick search of the vehicle and discovered quantities of methamphetamine, LSD, and cocaine on top of the visor above where the appellee was seated in the vehicle.
 {¶ 8} Officer Morrison asked the appellee about the ownership of the drugs. Appellee did not respond. Officer Morrison repeated the question and appellee again did not respond. Officer Morrison then advised appellee that he could be charged with illegal possession of narcotics. At that time, appellee acknowledged ownership of the drugs. Officer Morrison then arrested the appellee and advised him of hisMiranda rights. *Page 4 
 {¶ 9} Officer Morrison transported appellee to the Loudonville Police Department and went over a written Miranda waiver with him. Appellee was able to identify the illegal narcotics found in his vehicle and alleged that he did not purchase them in Loudonville, Ohio.
 {¶ 10} Appellee was indicted by the Ashland County Grand Jury for one count of possession of cocaine, one count of possession of LSD, and one count of aggravated possession of drugs, all felonies of the fifth degree in violation of R.C. 2925.11.
 {¶ 11} Appellee filed a motion to suppress the evidence seized from his vehicle and the statements made to the law enforcement officer, citing State v. Robinette III, 80 Ohio St.3d 234. Appellee did not allege in his motion that his consent to the search of his vehicle was involuntary.
 {¶ 12} On October 3, 2006, the trial court conducted a hearing on appellee's motion to suppress.
 {¶ 13} On October 12, 2006, the trial court filed its Opinion and Judgment Entry on Defendants Motion to Suppress Evidence in which it granted appellee's motion to suppress the evidence seized and any statement made to law enforcement. The trial court found: "[t]he facts of this particular case are substantially similar to Robinette. The detention of the Defendant and his vehicle ended when Officer Morrison handed the citations to the pertinent individuals. In order to justify any continued detention of the Defendant, there had to be articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention or voluntary consent to continued detention. There was no evidence or argument at hearing that there were articulable facts giving rise to a suspicion of some illegal activity. The sole argument for the *Page 5 
extended detention was voluntary consent from the Defendant . . . There is no evidence in this case that Officer Morrison coerced the Defendant into answering questions or consenting to a search of his vehicle. However, based upon a totality of the circumstances, the Court finds that the evidence does not establish that the Defendant's consent to Officer Morrison's search of his vehicle and continued detention for that purpose was voluntary." (Opinion and Judgment Entry on Defendant's Motion to Suppress, filed October 12, 2006 at 9).
 {¶ 14} The trial court further determined that: "[g]iven the court's suppression of the physical evidence based upon a finding of constitutional violation with regard to the search of the Defendant's vehicle, the Defendant's statements constitute derivative evidence or what is commonly referred to as `fruits of the poisonous tree.' For that reason, the Court orders that the Defendant's statements shall also be suppressed in this case." (Id. at 8-9).
 {¶ 15} It is from the trial court's October 12, 2006 Judgment Entry granting appellee's motion to suppress that the State of Ohio now appeals raising the following assignment of error:
 {¶ 16} "I. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION TO SUPRESS EVIDENCE."
 I. {¶ 17} First, we must determine what our standard of review is in regard to a trial court's judgment entered on a motion to suppress. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See State v. Dunlap (1995), *Page 6 73 Ohio St.3d 308, 314, 652 N.E.2d 988; State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See Dunlap, supra; State v. Long
(1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Featherstone; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v. Arvizu (2002),534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 18} Accordingly, we review determinations of historical facts only for clear error. Ornelas, supra; State v. Gillard (1997),78 Ohio St.3d 548, 552, 679 N.E.2d 276, 281. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas, supra at 698, 116 S.Ct. at 1663.
 {¶ 19} The first issue in the case at bar is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. State v.Prigmore, 5th Dist. No. 2005-CA-00115, 2005-Ohio-6952
at ¶ 15. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."United States v. United States Gypsum Co. (1947), 333 U.S. 364, 395. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one *Page 7 
direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'." United States v. YellowCab Co. (1949), 338 U.S. 338, 342.
 {¶ 20} In the case at hand, appellant denied that he gave consent to search the vehicle. Officer Morrison testified that he asked permission to search the truck to which the appellant replied "go ahead." (T. at 18). Appellant testified that Officer Morrison never requested permission to search the truck. Appellant testified that Officer Morrison ordered everyone out of the vehicle and proceeded to carry out a search of the vehicle's passenger compartment. (T. at 150; 160-161). Appellant further testified that he never gave Officer Morrison permission to search the vehicle. (T. at 162). Accordingly, appellant testified that Officer Morrison's testimony was a lie. (T. at 162).
 {¶ 21} In the trial court's Judgment Entry overruling appellant's motion to suppress filed October 12, 2006, the Court found "the officer's testimony regarding the discussion concerning consent to search is more credible and therefore the Court will evaluate the legality of the search under consensual search standards." The trial court further found that there is no evidence in the record that Officer Morrison coerced the appellee into answering questions or consenting to a search of his vehicle.
 {¶ 22} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the testifying law enforcement officer. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of Officer Morrison. Such a choice is not clearly erroneous. Yellow Cab, 338 U .S. at 342; Prig more, supra at ¶ 17. *Page 8 
 {¶ 23} Having determined that the trial court did not err in finding appellant consented to the search, we must next determine whether all of the surrounding circumstances and procedures used by the police in gaining that consent were consistent with appellant's constitutional rights. State v. Lattimore, 10th Dist. Dist. No. 03AP-467, 2003-Ohio-6829 at ¶ 9.
 {¶ 24} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See United States v. Drayton (2002),536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); Schneckloth v. Bustamonte (1973), 412 U.S. 218,219, 93 S.Ct. 2041, 36 L.Ed.2d 854 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); State v. Comen (1990),50 Ohio St.3d 206, 211, 553 N.E.2d 640. In Schneckloth, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227-228. See, State v. Fry, 4th Dist. No. 03CA26, 2004-Ohio-5747 at ¶ 18. The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." INS v. Delgado (1984), 466 U.S. 210, 216, 104 S.Ct. 1758;Drayton, supra, 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." Schneckloth v. Bustamonte(1983), 412 U.S. 218, 235,93 S.Ct. 2041, 2052 (quoting Johnson v. Zerbst(1938), 304 U.S. 458, 464,58 S.Ct. 1019, 1023); State v. *Page 9 Barnes (1986), 25 Ohio St.3d 203, 495 N.E.2d 922; State v.McConnell, 5th Dist. No. 2002CA00048, 2002-Ohio-5300 at ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. Further, "[voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." State v.Robinette (1997), 80 Ohio St.3d 234, 241, 685 N.E.2d 762, citingDavis, supra, at 593-594. The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. State v. Clelland (1992), 83 Ohio App.3d 474, 615 N.E.2d 276.
 {¶ 25} The case at bar aptly illustrates the conundrum faced by law enforcement officers seeking to obtain consent to search pursuant to a legitimate roadside stop for a traffic violation. Both the United States Supreme Court and the Supreme Court of Ohio have eschewed any bright-line tests for determining the validity of such a request. See,Ohio v. Robinette (1996), 519 U.S. 33, 39, 117 S.Ct. 417, 421; State v.Robinette, 80 Ohio St.3d 234, 236-237, 1997-Ohio-343, 685 N.E.2d 762,765. Both Courts have refused to adopt a requirement that an officer would have to advise the individual that he or she had a right to refuse to consent to a search before an officer attempts to engage in a consensual search. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 227,93 S.Ct. 2041; State v. Robinette, supra, 80 Ohio St.3d at 241-242,685 N.E.2d at 768.
 {¶ 26} A request for consent and search which occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop and issue a citation does not violate the individual's constitutional rights. This is so because the detention was not illegally prolonged in order to gain the individual's consent. See, State v. Batchili,113 Ohio St.3d 403, 2007-Ohio-2204; Lattimore, supra, 2003-Ohio-6829 *Page 10 
at ¶ 12-13. In the case at bar, had Officer Morrison asked for permission to search while he was awaiting the computer check on the appellant's driver's license, registration, and vehicle plates the constitution would not be implicated. Batchili, supra. Here Officer Morrison had completed the issuance of the citations, handed the citations to the individuals and then simply asked for permission to search the vehicle. In order to justify a continued detention beyond the normal time frame required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." Batchili, supra 2007-Ohio-2204 at ¶ 15. (CitingState v. Howard, Preble App. Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656 at ¶ 16). What is troubling to this Court is the common sense recognition that a "reasonable person" would not feel free to leave until the officer actually completes the issuance of the traffic citation. The potentially coercive effect of the roadside detention is far more compelling when the officer requests permission to searchbefore completing the citation. An officer's request to search made when the driver is truly detained and awaiting the issuance of the citation comes at a point during the encounter when a reasonable person would recognize that he is not free to leave; the driver would be justified in leaving, or at least inquiring if he was free to leave, after having received the citation from the officer.
 {¶ 27} After handing appellant the citations Officer Morrison asked appellant if he had anything illegal in the vehicle. (T. at 18). Appellant replied that he did not. (Id.). Accordingly, as was true inRobinette, supra, Officer Morrison did not have any reasonably articulable facts or individualized suspicion to justify appellant's further *Page 11 
detention in order to ask to search his car. 80 Ohio St.3d at 241,685 N.E.2d at 768-769.
 {¶ 28} However, even if the detention is illegally prolonged "[voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." State v.Robinette (1997), 80 Ohio St.3d 234, 241, 685 N.E.2d 762, citingDavis, supra, at 593-594. In Robinette the Court further noted "[w]e find Bustamonte instructive in defining when permission to search is truly consensual under the totality of the circumstances:
 {¶ 29} `[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth andFourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.' Id., 412 U.S. at 248-249, 93 S.Ct. at 2059,36 L.Ed.2d at 875". 80 Ohio St.3d at 242-243, 685 N.E.2d at 769. The State's burden is not satisfied by showing a mere submission to a claim of lawful authority. Id. at 243, 685 N.E.2d at 770.
 {¶ 30} In the case at bar Officer Morrison testified that he did not use a commanding tone of voice when asking appellant's permission to search the truck. (T. at 18-19). He did not threaten appellant or make any promises to him. (Id.). Appellant and his passengers were seated inside the vehicle at the time of the request. Appellant was not handcuffed, and the officer did not have his gun drawn. Also, there was only a *Page 12 
single police cruiser and one officer when the request to search was made. In addition, that appellant was being temporarily detained for the traffic violation at the time of his consent was not enough in itself to demonstrate a coerced consent to search, given that even being in formal police custody at the time of consent is insufficient to demonstrate coercion. United States v. Watson (1976), 423 U.S. 411, 423,96 S.Ct. 820, 828.
 {¶ 31} In the case at bar, appellant did not contend that he was coerced into consenting to the search of his vehicle; appellant steadfastly denied that he gave Officer Morrison consent to search. The trial court found Officer Morrison's testimony to be more credible than the appellant's. The trial court further found no evidence in the record that Officer Morrison coerced the appellee into answering questions or consenting to a search of his vehicle.
 {¶ 32} Giving due deference to the trial court's determination of credibility and the finding that appellee's consent was not the result of coercion, we find the evidence produced during the hearing on appellant's motion to suppress leads to the conclusion that appellant's consent was in fact voluntarily given. We agree with the trial court that the record contains no evidence that appellant's consent was the result of duress or coercion, express or implied. We find that the trial court incorrectly decided the ultimate or final issue raised in appellee's motion to suppress, and further that the trial court failed to apply the appropriate test or correct law to the findings of fact.State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor (1993),85 Ohio App.3d 623, 627; State v. Guysinger (1993), 86 Ohio App.3d 592.
 {¶ 33} We are unwilling to adopt a bright-line rule that would require law enforcement officers to cease all communication with a driver after handing him a traffic *Page 13 
citation. Once the detention is ended by the issuance of the citation a reasonable person would at least inquire as to whether or not he is free to go on his way. We find an officer's request made at the conclusion of the traffic stop not fundamentally different then if an officer were to approach a parked car and engage the occupants in conversation and a request to search the vehicle. In both cases most citizens will respond to a police request but the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Delgado, supra. As in the case at bar, an officer may request permission to search provided the officer does not convey a message that compliance with his request is required.Florida v. Bostick (1991), 501 U.S. 429, 434-435 111 S .Ct. 2382, 2386.
 {¶ 34} "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. United States v.Flowers (6th Cir.1990), 909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434,111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also INS v. Delgado, 466 U.S. 210,212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage."Bostick, supra, at 434-435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. Florida v. Royer (1983), 460 U.S. 491, 497-98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id. An officer may request permission to *Page 14 
search provided the officer does not convey a message that compliance with his request is required. Florida v. Bostick (1991), 501 U.S. 429,434-435 111 S .Ct. 2382, 2386. Whether the request occurs before the ticket is finally written or after the officer hands the completed ticket to the driver is merely one factor in determining whether the duration of the stop can be said to invalidate the driver's consent to search.
 {¶ 35} We find Officer Morrison's request to search appellee's truck under the totality of the circumstances presented in this case does not amount to an unjustifiable intrusion by the government on the privacy of an individual such as to constitute a violation of the Fourth Amendment to the United States Constitution. We find no evidence in the record that appellant's consent was the result of duress or coercion, express or implied.
 {¶ 36} For the forgoing reasons, the judgment of the Ashland County Court of Common Pleas, Ohio is reversed and this case is remanded for further proceedings consistent with this opinion.
Gwin, P.J., Hoffman, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Ashland County Court of Common Pleas, Ohio is reversed and this case is remanded for further proceedings consistent with this opinion. Costs to appellee. *Page 1