JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1.
 {¶ 2} The plaintiff-appellant, City of Brecksville ("City"), appeals the trial court's granting the motion to suppress filed by defendant-appellee, Vernell Jones ("Jones"). For the following reasons, we affirm the decision of the trial court.
 {¶ 3} In 2006, Jones was charged with underage possession of alcohol. He filed a motion to suppress the evidence seized from a backpack in the trunk of his car. After a full hearing, the trial court granted his motion and dismissed the charge.
 {¶ 4} The following evidence was presented at the motion hearing.
 {¶ 5} On May 31, 2006, Brecksville police responded to a call from a resident, Adrian Gallucci ("Gallucci"), who complained that someone was knocking on her door, and she was concerned because she was not expecting anyone at 11 P.M.[1] While en route to the call, Sergeant Mares observed a vehicle leaving the condominium complex where Gallucci lived. Sgt. Mares believed that the timing was "perfect" for the vehicle which he observed leaving the condominium complex to have just left Gallucci's condominium. Sgt. Mares saw what appeared to be three juvenile males in the car. He testified that, because this was the only vehicle leaving the condominium complex at 11 P.M., he suspected that the car's occupants may have been involved in the "incident." *Page 4 
 {¶ 6} Sgt. Mares stopped the vehicle to investigate. Jones was driving, and Gallucci's brother, Nicholas, and Mark Marek were passengers.[2] Nicholas Gallucci told the officer that they had just left his sister's house after unsuccessfully trying to reach her.
 {¶ 7} As he spoke to the young men, Sgt. Mares detected a strong odor of cologne coming from inside the car. He suspected the cologne was an attempt to mask the smell of marijuana or alcohol. Another officer arrived on the scene and also detected the strong smell of cologne.
 {¶ 8} After questioning the occupants about their evening, Sgt. Mares asked to search the vehicle. Whether consent was actually given is in dispute. Sgt. Mares and the other officer testified that Jones consented to the search. Jones and Marek testified that the police said they were going to search the car, but never asked for consent. Jones also testified that he asked the other officer if he had to allow the police to search his car, and the officer responded that he did not have to consent, but if he refused, they would impound his car and search it later. Sgt. Mares searched Jones' car and found alcohol inside a backpack in the trunk of the car.
 {¶ 9} The trial court granted Jones' motion to suppress. The court found that there was no relationship, other than the close proximity, connecting Jones' car with the knock on Gallucci's door. The court also found that the smell of cologne did not give rise to reasonable suspicion that the occupants of a vehicle were engaged in *Page 5 
illegal consumption or possession of alcohol or drugs; thus, the search was illegal. The court noted that the officers did not observe any other indicia that the men were under the influence of any drug or alcohol other than the smell of cologne (e.g. glassy eyes, slurred speech).
 {¶ 10} At a suppression hearing, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of the witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Harris (1994),98 Ohio App.3d 543, 546, 649 N.E.2d 7. After accepting such factual findings, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied.State v. Lloyd (1998), 126 Ohio App.3d 95, 709 N.E.2d 913.
 {¶ 11} In Terry v. Ohio, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot."Terry v. Ohio (1968), 392 U.S. 1, 9, 20 L.Ed.2d 889, 88 S.Ct. 1868; see, also, State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.
 {¶ 12} A valid investigative stop must be based on more than a mere "hunch" that criminal activity is afoot. United States v. Arvizu (2002),534 U.S. 266, *Page 6 151 L.Ed.2d 740, 122 S.Ct. 744; Terry, supra at 27. However, reviewing courts should not "demand scientific certainty" from law enforcement officers. Illinois v. Wardlow (2000), 528 U.S. 119, 125,145 L.Ed.2d 570, 120 S.Ct. 673.
 {¶ 13} In deciding whether reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." Arvizu, supra, quoting, United Statesv. Cortez (1981), 449 U.S. 411, 417-418, 66 L.Ed.2d 621, 101 S.Ct. 690;State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, citing, State v. Freeman (1980), 64 Ohio St.2d 291,414 N.E.2d 1044.
 {¶ 14} Under the totality of the circumstances test, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'"Arvizu, quoting Cortez, supra at 418. Thus, a court reviewing an officer's reasonable suspicion determination must give due weight to the officer's trained eye and experience and view the evidence through the eyes of law enforcement. Id. See, also, Andrews, supra at 87-88.
 {¶ 15} The City argues that the police possessed the requisite reasonable suspicion to justify the stop of Jones' vehicle. We disagree. Under Terry and Bobo, police must have reasonable suspicion that criminal activity is imminent and they must be able to point to specific facts to justify the conclusion that the defendant is *Page 7 
engaged in criminal activity. State v. Scales, Cuyahoga App. No. 87023,2006-Ohio-3946.
 {¶ 16} The City relies on two cases to support its argument that the police had reasonable suspicion that criminal activity was afoot. These cases, State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, andBobo, supra, are easily distinguishable. In Comen, the officers stopped a vehicle after receiving a call reporting a burglary in progress. InBobo, the police were in a high crime area and observed the defendant making furtive movements. In the instant case, there was no testimony that the condominium complex was located in a high crime area, no testimony that anyone in the vehicle made furtive movements and, most importantly, there was no testimony that police were responding to a call that a crime had occurred, was occurring, or was about to occur.
 {¶ 17} Sgt. Mares testified that Brecksville police received a call from a woman who stated that someone was knocking at her door. Simply stated, knocking on a door is not a crime. The City argues that it was reasonable for Sgt. Mares to suspect Jones' vehicle as being connected to Gallucci's call for assistance because it was the only vehicle leaving the condominium complex at that time. However, Sgt. Mares also testified that there are multiple entrances to the complex. Thus, the person(s) who knocked at Gallucci's door could have left by any of the four exits identified by Sgt. Mares. Although further investigation revealed that Nicholas had *Page 8 
been knocking at his sister's door, the fact that Sgt. Mares' hunch was correct does not justify the stop.
 {¶ 18} Sgt. Mares testified that he stopped the car because he saw three juveniles in the car and thought they could be the ones who had knocked on Gallucci's door. That alone did not give him reasonable suspicion that criminal activity was afoot because knocking on someone's door does not constitute criminal activity. Moreover, the simple fact that the males appeared to be juveniles did not provide reasonable suspicion because there was no testimony that they were violating any curfew.[3]
 {¶ 19} Therefore, we cannot say that the officers had reasonable suspicion to stop and detain Jones because no specific or articulable facts existed to support the officer's contention that criminal activity was "afoot." Because the stop was unjustified, the search of the car was also unjustified.[4] The trial court correctly granted the motion to suppress.
 {¶ 20} Therefore, the sole assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant his costs herein taxed. *Page 9 
The court finds there were no reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Garfield Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J. and CHRISTINE T. McMONAGLE, J. CONCUR
[1] The record indicates two spellings for the caller's surname: Colucci and Gallucci.
[2] The record also reveals two spellings for Nicholas' surname, Colucci and Gallucci.
[3] All three occupants in Jones' car were nineteen years old.
[4] Although we are greatly troubled by the search of Jones' car based on the "cologne smell test," the fact that the search extended to a backpack in the trunk, and the fact that there was no testimony that the search was for weapons or officer safety, we need not reach the legality of the search because we have determined that the initial stop was improper; thus, the subsequent search was unlawful. *Page 1