OPINION *Page 2 
{¶ 1} Plaintiff-appellant the State of Ohio appeals the January 17, 2008 Judgment Entry of the Tuscarawas County Court of Common Pleas sustaining Defendant-appellee Thomas M. Lute's motion to suppress evidence.
 STATEMENT OF THE CASE AND FACTS {¶ 2} At approximately 12:30 a.m. on August 8, 2007, the Tuscarawas County Sheriffs Office received a 911 call from a resident of a rural area outside of Dennison, reporting a prowler on his porch. The 911 call did not provide a description or mention of any motor vehicle in relation to the suspicious person.
 {¶ 3} Deputy Mike Hickman responded to the area and began a search for the prowler. (T. at 8-10). The officer's first thoughts were that the prowler might have come from a bar a short distance away. (T. at 9). Deputy Hickman is also the handler of a trained drug detection dog. (T. at 18).
 {¶ 4} While Deputy Hickman was the primary officer involved in the investigation, two other deputies, in their own cruisers, were in the area and responded, first to the prowler call and then to assist Deputy Hickman. (T. at 29). The officers and dispatcher were all in radio contact. (T. at 25). The calls were recorded on the Emergency 911 recording system. A transcript of the radio calls was admitted into evidence during the suppression hearing.
 {¶ 5} After investigating the immediate area, the Deputy Hickman began driving along Wolfe Run Road using his spotlight to illuminate the roadside. (T. at 10). Co-defendant Amanda Lute was driving on Wolfe Run Road when she came upon a sheriff's cruiser traveling at a slow rate of speed. *Page 3 
 {¶ 6} As Ms. Lute drove behind Deputy Hickman, her husband, appellee Thomas M. Lute, the front seat passenger, reminded her to keep the car back so as not to interfere with the law enforcement officer. (T. at 48). Deputy Hickman testified that he noted the Lute vehicle sped up and slowed down. However, he admitted on cross-examination that he alternately sped up and slowed down to spotlight and observe the area alongside the roadway. (T. at 21; 25). As Deputy Hickman proceeded on Wolfe Run Road, he made no calls reporting unusual driving by the car driven by Ms. Lute.
 {¶ 7} Ms. Lute testified that it was her intention to stop for gasoline in Uhrichsville, Ohio. To get to Uhrichsville from Wolfe Run Road, Ms. Lute had to turn left on to Eastport. She made the turn and continued to follow the deputy because he had turned left in front of her. Shortly thereafter, the deputy pulled off the roadway, permitted the Lute vehicle to go by, and immediately re-entered Eastport to follow the Lute vehicle. (T. at 49).
 {¶ 8} Deputy Hickman stated that he was fairly close to the Lutes. He called in the license plate number. At first, he insisted he could read the plate from forty feet away. (T. at 24). However, after testifying that the cars were traveling on a dark, rural road at or about midnight, he admitted he was perhaps within one car length to get the license plate number. (T. at 25). There was no mention of any driving infraction during this exchange.
 {¶ 9} As Deputy Hickman was following the Lute vehicle, a second deputy suggested that Deputy Hickman check to see if the driver's shoes were wet from the yard around the house where the "suspicious person" complaint had been made. Deputy Hickman responded that he would stop the vehicle at a suitable location, stating *Page 4 
that the vehicle had already crossed the centerline "a couple of times." The officer stated, on cross-examination, that the reason he stopped the Lute vehicle was "left of center." (T. at 19). Ms. Lute denied traveling left of center. (T. at 56). Thomas Lute testified that he did not witness any driver error. (T. at 66).
 {¶ 10} When Deputy Hickman stopped the vehicle, he found a female, identified as Amanda Lute, in the driver's seat, a male, identified as Thomas Lute, in the front passenger seat, and a second male, Randall Hahn, in the back seat. As Deputy Hickman attempted to identify the driver and occupants, he noticed an odor of alcohol coming from inside the car. (T. at 15). He also saw an open beer container beside the front seat passenger. (Id). Ms. Lute testified that she informed Deputy Hickman that they were in the area picking up a puppy. (T. at 53). Deputy Hickman testified that he had observed a puppy inside the vehicle. (T. at 15). Deputy Hickman did not perform any field sobriety or any other test to determine whether Ms. Lute, the driver of the vehicle, was impaired. (T. at 32).
 {¶ 11} As Deputy Hickman continued to question the occupants, Ms. Lute informed the officer that she saw someone "jump over the guardrail" near the cemetery (T. at 16). Deputy Hickman was following the Lute vehicle closely from the cemetery in the area where the person was supposed to have jumped over the guardrail. Deputy Hickman saw nothing. (T. at 34-36).
 {¶ 12} Deputy Copple arrived on the scene to assist Deputy Hickman. (T. at 16). Deputy Copple seized the can of beer and emptied it while Deputy Hickman attempted to speak with the rear seat passenger. The individual in the rear seat refused to look at Deputy Hickman and began acting strangely. (T. at 16-17). *Page 5 
 {¶ 13} After the initial contact, Deputy Hickman had his drug dog walk around the vehicle. (T. at 18). The drug dog alerted on the vehicle. A small quantity of cocaine was located in the purse of co-defendant Amanda Lute, and small quantities of cocaine were also found on the person and on the floorboard near the rear passenger, co-defendant Randall L. Hahn. No cocaine was found on appellee Thomas Lute.
 {¶ 14} All Defendants were indicted for possession of cocaine. Each Defendant filed an identical motion to suppress the evidence claiming that the stop of the vehicle was without constitutional basis[1] .
 {¶ 15} A hearing on the Lutes' suppression motion was conducted on January 7, 2008. In addition to the testimony of Deputy Sheriff Hickman, a recording of the original prowler call and the radio traffic related to the stop, routinely recorded by the Sheriffs Department, was admitted into evidence.
 {¶ 16} By agreement of the State of Ohio and the defense, Deputy Hickman's testimony and the recorded radio traffic was considered by the court in co-defendant Hahn's suppression motion.
 {¶ 17} The trial court sustained the motion to suppress the evidence in all three cases.
 {¶ 18} The State of Ohio now appeals the judgment of the trial court suppressing the evidence raising the following assignments of error:
 {¶ 19} "I. DID DEPUTY HICKMAN HAVE REASONABLE AND ARTICULABLE FACTS SUFFICIENT TO CONDUCT AN INVESTIGATORY STOP OF THE LUTE VEHICLE BASED UPON THE INITIAL PROWLER REPORT, THE LOCATION OF THE *Page 6 
LUTE VEHICLE IN THE IMMEDIATE AREA OF THE LOCATION, AND THE PECULIAR DRIVING BY AMANDA LUTE.
 {¶ 20} "II. DID DEPUTY HICKMAN HAVE SUFFICIENT PROBABLE CAUSE TO STOP THE VEHICLE FOR VIOLATION OF A TRAFFIC OR OTHER LAW RESULTING IN A VALID SEARCH OF THE VEHICLE."
 I. II. {¶ 21} In the First Assignment of Error, the appellant maintains that the officer possessed a reasonable, articulable suspicion of criminal activity to justify the stop. In the Second Assignment of Error, appellant argues that although a police officer may have an ulterior motive, a stop of a motor vehicle is valid if the officer observed even a de minimis traffic violation. Because we find these issues to be interrelated, we shall address these assignments of error together.
 {¶ 22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93,96; State v. Claytor (1993), 85 Ohio App. 3d 623, 627; State v.Guysinger (1993), 86 Ohio App. 3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, *Page 7 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 23} First, we must determine what our standard of review is concerning a trial court's judgment entered on a motion to suppress. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See State v. Dunlap (1995),73 Ohio St.3d 308, 314, 652 N.E.2d 988; State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See Dunlap, supra; State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E. 2d 1; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E. 2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Featherstone; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v. Arvizu (2002),534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 24} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact." Ornelas v.United States (1996), 517 U.S. 690, 695-96, 116 S.Ct. 1657, 1661-62. *Page 8 
 {¶ 25} The Ohio Supreme Court has stated that "* * * where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." City of Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12; 665 N.E.2d 1091. See, also, State v. Rice, Fifth Dist. No. 2005CA00242, 2006-Ohio-3703 at ¶ 33-34. The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St. 3d 177, 524 N.E. 2d 489, paragraph one of the syllabus, citingState v. Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
 {¶ 26} Nevertheless, a police stop of a vehicle is a significant intrusion that requires justification for the seizure under the Fourth
and Fourteenth Amendments to the United States Constitution.Delaware v. Prouse (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 1395,59 L.Ed.2d 660, 667. A police officer cannot cause an investigative stop without at least "specific and articulable facts" that would support the officer's belief that a crime had been committed or was being committed.Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
 {¶ 27} In general, we review determinations of historical facts only for clear error. Ornelas, supra; State v. Gillard (1997),78 Ohio St. 3d 548, 552, 679 N.E.2d 276, 281. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas, supra at 698, 116 S.Ct. at 1663.
 {¶ 28} The first issue in the case at bar is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress *Page 9 
evidence, were clearly erroneous. State v. Prigmore, 5th
Dist. No. 2005-CA-00115, 2005-Ohio-6952 at ¶ 15. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v.United States Gypsum Co. (1947), 333 U.S. 364, 395. Moreover, where the evidence would support several conclusions, but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'." United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342.
 {¶ 29} In ruling on the Motion to Suppress, the trial court made the following findings:
 {¶ 30} "FINDS that the arresting officer in this case didnot effect a traffic stop of the motor vehicle operated by Defendant Amanda J. Lute and in which Defendant Thomas M. Lute was a passenger as a result of any traffic or driving violations of Ms. Lute but did so, in the opinion of the under signed, expressly in order to determine if a person in the motor vehicle was a suspect relative to the `suspicious person' complaint investigated by this law enforcement officer (Deputy Hickman) at least a mile away from the location where Deputy Hickman first observed the Defendants' motor vehicle.
 {¶ 31} "* * *
 {¶ 32} "FINDS that Deputy Hickman, in this case, effected anInvestigative Traffic Stop of Defendants' motor vehicle and not aNon-Investigative Traffic Offense Stop. This is so because Officer Hickman clearly indicated on the audio tape recording presented to the Court as Defendants' Exhibit 1 in this case that he was effecting a traffic stop of the Defendants' motor vehicle in order to "see if their shoes are wet." *Page 10 
Officer Hickman did not stop this motor vehicle for the later stated reason (on the audio tape) that the vehicle crossed marked lines several times.
 {¶ 33} "* * *
 {¶ 34} "FINDS that the only fact implicating Defendants in the `suspicious person' complaint filed with the Tuscarawas County, Ohio Sheriff Department and communicated to Deputy Hickman is the fact that Defendants' motor vehicle was observed by Deputy Hickman approximately one mile from the location of the alleged suspicious person incident. This fact alone is simply insufficient to allow a reasonable law enforcement officer to suspect that the occupants of Defendants' motor vehicle were involved in the `suspicious person' incident. Consequently, the 11/26/2007 Motions to Suppress filed by Defendants should beGranted." (Judgment Entry, Jan. 17, 2008 at 2; 3; 4). (Emphasis in original).
 {¶ 35} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. State v. Mills (1992), 62 Ohio St. 3d 357,582 N.E. 2d 972. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck Equipment Co., Inc. v. Joseph A. JeffriesCo. (February 10, 1982), Stark App. No. CA-5758. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, Miller v. Miller (1988), 37 Ohio St. 3d 71.
 {¶ 36} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not *Page 11 
reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 37} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the testifying law enforcement officer. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of the appellee. Such a choice is not clearly erroneous. Yellow Cab, 338 U .S. at 342; Prigmore, supra at ¶ 17.
 {¶ 38} We find the trial judge's findings to be supported by competent, credible evidence. In the case at hand, the "suspicious person" complaint did not mention a motor vehicle. Further, only one person was observed leaving the area on foot. The caller did not want to speak to the police officer because "nothing happened so far." There is no indication on the audio tape of any suspicious driving. The stop occurred nearly one-half of an hour after the "suspicious person" report and nearly one mile from the premises.
 {¶ 39} The State relies on State v. Patterson (1993),95 Ohio App.3d 255 to support its argument that the police had reasonable suspicion that criminal activity was afoot. However, that case is distinguishable. In Patterson, the officer testified that there had been a recent rash of burglaries in the several apartment complexes adjacent to *Page 12 
where the traffic stop and arrest took place. He further testified that various victims and witnesses had provided considerable information as to the mode of escape of the burglar. Based on this information, the police surmised that, although the burglar always escaped on foot, he either had a car parked close by, possibly driven by an accomplice, or that he or an accomplice lived in the area. In investigating one of the recent burglaries which occurred less than a quarter of a mile away from the arrest scene, the officer testified that a witness saw the burglar run west from Liberty Lane towards Oakridge, the road where the stop at issue took place. Patterson, supra, 95 Ohio App. 3d at 257.
 {¶ 40} In the case at bar, no previous crimes had been reported in the area. No one reported seeing or hearing any suspicious motor vehicles. The mere fact that the vehicle was driving on the road in the area from which a prowler complaint was made is not a sufficient basis for making an investigative stop. State v. Brecksville, Cuyahoga App. No. 88933,2007-Ohio-3770.
 {¶ 41} Therefore, we cannot say that the officer had reasonable suspicion to stop and detain appellant because no specific or articulable facts existed to support the officer's contention that criminal activity was "afoot." Because the stop was unjustified, the search of the car was also unjustified. The trial court correctly granted the motion to suppress.
 {¶ 42} Appellant's First and Second Assignments of error are denied. *Page 13 
 {¶ 43} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.
 Gwin, P.J., Farmer, J., and Wise, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed. Costs to appellant.
[1] Amanda Lute has appealed in Case Number 2008 AP 01 0007; Randall L. Hahn has appealed in Case Number 2008 AP 01 0009. *Page 1